IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **DAISY HERRERA,** | ) | |
| **Plaintiff,** | ) ) ) | |
| **v.** | ) ) | **5:24-cv-00904-LSC** |
| **DAIKYONISHIKAWA USA INC.,** | ) ) ) | |
| **Defendant.** | ) | |

**MEMORANDUM OF OPINION**

Plaintiff Daisy Herrera brings this action against Defendant Daikyonishikawa USA, Inc. ("DNUS"), alleging that DNUS wrongfully terminated her employment in violation of the Pregnant Workers Fairness Act, 42 U.S.C. §§ 2000gg-1. Before this Court is DNUS' motion to compel arbitration. (Doc. 9.) For the reasons explained more fully herein, the motion is due to be **GRANTED**.

**I.    Background**

Herrera was employed at DNUS' automobile parts manufacturing plant in Madison, Alabama, from May 30, 2023 to October 17, 2023. (Doc. 9 ¶¶ 1-2.) On May 30, 2023, Herrera "executed an Offer Letter . . . with DNUS" which contained the following provision regarding governing law and dispute resolution:

> This Offer Letter shall be governed by and construed in accordance with the laws of the State of Alabama without regard to principles of conflict of laws. Except for matters involving the Company's

confidential, proprietary or trade secret information, for which equitable relief may be sought by the Company in any court of competent jurisdiction, you and the Company agree that any dispute arising out of or related to the contents of this letter or your employment shall be resolved by binding arbitration under the then-current Arbitration Rules of the American Arbitration Association ("AAA") before a single arbitrator in Huntsville, Alabama, and judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.

(Doc. 9 ¶ 3-4; Doc. 9-2 at 4.) The Offer Letter also stated, "[t]o accept the terms and conditions set forth herein and agree to the requirements contained in the . . . 'Dispute Resolution' section[], please sign one (1) copy of this letter and return it to me." (Doc. 9 ¶ 5; Doc. 9-2 at 5.) DNUS asserts that when Herrera signed and returned the Offer Letter, she "acknowledge[d] and agree[d] to the terms, conditions, and the requirements of [her] employment with the Company as set forth in [the] Offer Letter." (Doc. 9 ¶ 6 (quoting doc. 9-2 at 5.))

Herrera filed her Complaint with this Court on July 9, 2024, alleging that DNUS violated the Pregnant Workers Fairness Act by "wrongfully terminat[ing] [her] and refus[ing] to accommodate her physical limitations" after she gave birth to her son. (Doc. 1 ¶ 31.) DNUS filed a motion to compel arbitration of this action on September 3, 2024. (Doc. 9.)

## II. Standard of Review

In ruling on a motion to compel arbitration, this Court applies a standard similar to review of a motion for summary judgment. *See In re Checking Account*

*Overdraft Litig.*, 754 F.3d 1290, 1294 (11th Cir. 2014) (describing an order compelling arbitration as "summary-judgment-like" because it is "in effect a summary disposition of the issue of whether or not there has been a meeting of the minds on the agreement to arbitrate"); *see also Bazemore v. Jefferson Cap. Sys., LLC*, 827 F.3d 1325, 1333 (11th Cir. 2016). A motion for summary judgment is due to be granted upon a showing that "no genuine dispute as to any material fact" remains to be decided in the action and "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material "if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir. 2004). A genuine dispute as to a material fact exists where "the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Waddell v. Valley Forge Dental Assocs., Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001).

### III. Discussion

As an initial matter, Herrera does not dispute either (1) that she entered into an arbitration agreement by signing the Offer Letter or (2) that the Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., governs any arbitration agreement between the parties. (*See, e.g.*, doc. 11 at 1-2, 4.) The FAA "sets forth a clear presumption . . . in favor of arbitration" by "requir[ing] the courts to enforce an arbitration provision within a contract . . . unless [the provision is] defeated by fraud,

duress, unconscionability, or another 'generally applicable contract defense.'" *Parnell v. CashCall, Inc.*, 804 F.3d 1142, 1146 (11th Cir. 2015). However, the FAA exempts "contracts of employment of seamen, railroad employees, or any other class of workers engaged in foreign or interstate commerce" from its provisions. 9 U.S.C. § 1. The Supreme Court has held that the exemption applies to "only contracts with transportation workers, rather than all employees." *Sw. Airlines Co. v. Saxon*, 596 U.S. 450, 458 (2022) (citing *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001)). In response to DNUS' motion to compel arbitration, Herrera claims that she was a "transportation worker" during her employment at DNUS and is thus "exempt from the FAA's mandatory arbitration requirement." (Doc. 11 at 1-2, 9.)

In *Circuit City*, the Supreme Court "did not provide a complete definition of 'transportation worker,'" but it "indicated that any such worker must at least play a direct and 'necessary role in the free flow of goods' across borders." *Sw. Airlines Co. v. Saxon*, 596 U.S. at 458 (quoting *Circuit City Stores, Inc.*, 532 U.S. at 121). In other words, "transportation workers must be actively 'engaged in transportation' of those goods across borders via the channels of foreign or interstate commerce." *Sw. Airlines Co. v. Saxon*, 596 U.S. at 458 (quoting *Circuit City Stores*, Inc., 532 U.S. at 121).

Herrera argues that she falls under the "transportation worker" exemption because her position at DNUS "facilitate[ed] the distribution of goods that have

crossed state borders." (Doc. 19 at 8.) As an Assembly Associate at DNUS, Herrera's duties involved "operating equipment and machines that support production, correctly moving and labeling materials and products throughout the manufacturing process, and . . . inspecting products throughout the process." (*Id.*) Herrera alleges that this work "involved facilitating the production of goods, sale of goods to interstate customers and supporting the continuous movement of goods and services across state lines." (*Id.*) However, the fact that the goods Herrera helped manufacture at DNUS travelled through interstate commerce does not alone qualify her as a transportation worker. To satisfy the definition of a transportation worker in the context of the FAA, Herrera would also need to be "*actively 'engaged in transportation' of those goods*" through "channels of interstate commerce." *Sw. Airlines Co. v. Saxon*, 596 U.S. at 458 (quoting *Circuit City Stores, Inc.*, 532 U.S. at 121) (emphasis added). Based on Herrera's own description of her duties as an Assembly Associate, it appears Herrera was engaged in the manufacture, rather than the transportation, of goods.

This conclusion is further supported by the cases Herrera cites in her response to DNUS' motion to compel arbitration. For example, Herrera argues that the Supreme Court's decision in *Swiss Airlines Co. v. Saxon* supports her categorization as a transportation worker. However, in *Saxon*, the Court held that a ramp supervisor for Southwest Airlines qualified as a transportation worker because her duties

involved "load[ing] and unload[ing] baggage, airmail, and commercial cargo on and off airplanes that travel across the country." *Id.* at 453. Thus, the Court held that the ramp supervisor "belong[ed] to a 'class of workers engaged in foreign or interstate commerce' that is exempted from the [FAA]'s coverage." *Id.* According to Herrera's description of her duties at DNUS, she did not load or unload automobile parts on and off trucks, planes, or other carriers—she simply manufactured automobile parts that presumably had been or could be carried across state or foreign borders at some point. Unlike the ramp supervisor in *Saxon*, none of Herrera's job duties suggest "that [interstate] transportation was still in progress," *Erie R. Co. v. Shuart*, 250 U.S. 465, 468 (1919), or that she was "engaged in that transportation," *Saxon*, 596 U.S. at 458, when she produced, moved, labeled, or inspected goods as an Assembly Associate.

Herrera correctly notes that the Court has held that "[a] transportation worker need not work in the transportation industry to fall within the exemption." *Bissonnette v. LePage Bakeries Park St., LLC*, 601 U.S. 246, 256 (2024). In *Bissonnette*, the Supreme Court reversed the Second Circuit's holding that distributors of packaged baked goods could not qualify as transportation workers because they worked in the food industry, not the transportation industry. *Id.* at 256. However, here, it is not the industry in which Herrera worked, but the type of work she did that places her outside the exempted category of "transportation workers."

Again, the record evidence indicates that Herrera was not actively engaged in transporting the goods she assembled through channels of interstate commerce. The fact that those goods or their components travelled through interstate commerce at some point before or after being assembled at DNUS does not transform Herrera, an Assembly Associate at a manufacturing facility, into a transportation worker.[1] As the Supreme Court has noted, "[b]eing only 'perceptibly connected to ... instrumentalities' of interstate commerce [is] not enough" to render an employee a transportation worker. *Saxon*, 596 U.S. at 462 (quoting *Gulf Oil Corp. v. Copp Paving Co.*, 419 U.S. 186, 194 (1974)).

---

[1] Herrera also cites *Ortiz v. Randstad Inhouse Servs., LLC*, a Ninth Circuit decision she claims supports classifying her as a transportation worker. Even if Ninth Circuit decisions were binding on this Court, the facts in *Ortiz* are materially different from the facts of the present case. In *Ortiz*, the plaintiff worked at a warehouse that "receives and stores Adidas products after they arrive from international suppliers, then processes and prepares them for further distribution across state lines." *Ortiz v. Randstad Inhouse Servs., LLC*, 95 F.4th 1152, 1157 (9th Cir. 2024), cert. denied sub nom, *Randstad Inhouse Serv. v. Ortiz*, 2024 WL 4426655 (U.S. Oct. 7, 2024). The plaintiff's duties included "transporting packages to and from storage racks, helping other employees in obtaining packages so they could be shipped, and assisting the Outflow Department to prepare packages for their subsequent shipment." *Id.* at 1161. The Ninth Circuit found that Ortiz's job was sufficiently "'direct and necessary' to, 'actively engaged in,' and 'intimately involved with' the interstate commerce of Adidas products" to render him a transportation worker for FAA purposes. *Id.* at 1166. The record evidence indicates that DNUS differs from Ortiz's place of employment in that it is a manufacturing facility engaged in the production of goods, not a storage warehouse engaged in the processing and further shipment of already produced goods. Similarly, Herrera's job duties differ from Ortiz's duties. Herrera was responsible for "support[ing] *production*," and "moving and labeling materials and products throughout the *manufacturing* process," (doc. 19 at 8), whereas Ortiz was responsible for facilitating the continued transportation of already manufactured and packaged goods. Thus, *Ortiz* only further demonstrates that Herrera's job was insufficiently connected to the transportation of goods through interstate commerce to render her a transportation worker.

The record evidence demonstrates that Herrera is not a "transportation worker" in the context of the FAA. As a matter of law, she is thus not exempt from the FAA's mandatory arbitration requirement. Herrera has not pointed to any other reason why this Court should not enforce the arbitration agreement contained in the Offer Letter. Accordingly, DNUS' motion to compel arbitration of this action is due to be granted.

## IV. Conclusion

For the reasons described above, Defendant's Motion to Compel Arbitration (Doc. 9) is due to be **GRANTED**. A separate order to this effect will be entered contemporaneously herewith.

**DONE** and **ORDERED** on November 19, 2024.

L. Scott Coogler
United States District Judge

220685